**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARK LAWRENCE FIELDER,

        **Plaintiff,**        CIVIL ACTION NO. 13-cv-10325

  vs.

                          DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Mark Fielder seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 8) and Defendant's Motion for Summary Judgment (docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

    This undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 11) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of May 14, 2010, alleging that he had been disabled since October 30, 2009, due to back pain caused by degenerative disc disease. (*See* TR 23, 25.) The Social Security Administration denied benefits, and Plaintiff requested a *de novo* hearing, which was held on June 27, 2011, before Administrative Law Judge (ALJ) Mark Greenberg, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 23-30.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.   Plaintiff's Testimony

Plaintiff was 38 years old at the time of the administrative hearing and 36 years old at the time of alleged onset. (*See* TR 37.) Plaintiff had a high-school diploma. (TR 37.) Plaintiff testified that he hurt his back in September of 2009 and that he attempted to return to work after receiving a cortisone shot. (TR 37.) After being unable to perform his past work, Plaintiff was laid off on October 30, 2009. (TR 37.)

Plaintiff testified that his pain was located in his lower back on the left side and radiated down his left leg. (TR 39.) In general, his pain was about a six or a seven on a ten-point scale. (TR 39.) He told the ALJ that he could stand for a couple of hours and sit for 15 to 20 minutes at a time and that he could only lift about 20 pounds without pain. (TR 40-41, 45-46.) Plaintiff further told the ALJ that he could not perform a job "eight hours a day, five days a week if [he] could shift around and change [his] position as often as [he] needed to, if [he] were required to sit for up to six hours . . . and stand or walk for no more than two hours" because his back "locks up." (TR 41.)

Plaintiff testified that he took 200mg Motrin three or four times a day to help alleviate his

pain. (TR 44.) Plaintiff told the ALJ that he had been taking Motrin instead of prescription medication since the beginning of 2010 because his insurance ran out. (TR 38.) In addition to Motrin, Plaintiff told the ALJ that he would lay down on a hard floor with his feet up and take several naps each day. (TR 40.) Plaintiff testified that his typical day involved relaxing around the house and doing "odds and ends," like loading the dishwasher. (TR 38, 42.) Generally, he would watch television and read books or magazines. (TR 43.) Plaintiff added that he drove occasionally and got out of the house "usually once a day;" he would go out for dinner once or twice a week. (TR 41, 44.)

### B. Medical Record

Plaintiff does not provide a formal recitation of any medical evidence in this matter; instead, on the final page of his brief, Plaintiff notes as follows:

> Included in 1F and 2F are complaints of "chronic low back pain" and further reveals (sic) moderate herniation at L4-L5 and L5-S1. Additionally, an EMG from August of 2009 shows lumbar radiculopathy. Radiculopathy was also noted at L5-S1.

(*See* docket no. 8 at 11 (citations omitted).) As the ALJ discusses, Plaintiff injured his back in a motor-vehicle accident in 1989, but "[t]here is no medical evidence of any kind prior to May 2009." (TR 27.) Plaintiff's statement summarizes the objective testing that took place. (*See* TR 27.) Also, as noted by Defendant and the ALJ, in May of 2010, Plaintiff was given a non-steroidal anti-inflammatory agent and was told not to lift more than 20 pounds. (*See* docket no. 11 at 5; TR 27.) To the extent that any additional record information is relevant, the undersigned will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C. Vocational Expert's Testimony

The ALJ gave the VE the following hypothetical:

> [A]ssume an individual of the claimant's age, which is a younger individual, a high

> school education, and [claimant's past relevant work]. Able to perform light work with occasional postural activities; occasional left food controls; no ladders, ropes or scaffolds; frequent overhead work and no concentrated exposure to extreme cold, humidity, vibration or hazards.

(TR 49.) The VE testified that such an individual could not perform Plaintiff's past relevant work but that he could perform "a variety of light jobs." (TR 49-50.) The VE gave "[j]ust a couple" of examples, including a general cashier, a packer in a manufacturing-type setting, and a light cleaning position. (TR 50.) The VE testified that jobs for these occupations totaled 54,500 in the lower-peninsula of Michigan and over 2 million nationally. (TR 50.)

The ALJ then asked the VE to assume that this individual were "further limited to standing or walking no more than two hours in an eight-hour workday." (TR 50.) The VE testified that this would eliminate the light cleaner position and the cashier position, but the packer position would remain available, with reduced numbers of 2,500 in Michigan and 170,000 nationally. (TR 50-51.) The VE added that such an individual could also work as a production inspector and as a cashier in a parking lot, which would provide for an additional 3,500 jobs in Michigan and 80,000 jobs nationally. (TR 51.)

The ALJ then asked the VE to assume that this person were limited to sedentary work with a sit/stand option. (TR 51.) The VE testified that such an individual could work as a surveillance monitor, a bench assembler, or a parts inspector. (TR 51.) The VE added that these positions would provide for approximately 4,700 jobs in Michigan and 107,000 jobs nationally. (TR 51-52.) The ALJ then asked the VE if the answer would change if the individual were also limited to frequent reaching, handling, or fingering. (TR 52.) The VE testified that the answer to the previous hypothetical would remain the same. (TR 52.)

Finally, the ALJ asked if occupations would be available for an individual who required a

one-hour unscheduled break each day. (TR 52.) The VE testified that such a requirement would be work preclusive. (TR 52.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014; that Plaintiff had not engaged in substantial gainful activity since October 30, 2009, the alleged onset date; and that Plaintiff had severe degenerative disc disease. (TR 25.) The ALJ further found that Plaintiff's impairment did not meet or equal one of the listed impairments. (TR 25.) After finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairment were not wholly credible, the ALJ found that Plaintiff had the residual functional capacity to perform light work, "except he can stand or walk no more than two hours out of an eight-hour workday[, h]e can occasionally perform postural activities and occasionally operate foot controls using the left foot [, he] can frequently perform overhead work[, he] is unable to climb ladders, ropes and scaffolds[, and h]e is unable to have concentrated exposure to extreme cold, humidity, vibration and hazards." (TR 26.) In reliance on the VE's testimony, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, and therefore, Plaintiff was not disabled at any time from October 30, 2009, through the date of the ALJ's decision. (TR 30.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

  **B.**  **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

  (1)  Plaintiff was not presently engaged in substantial gainful employment; and

  (2)  Plaintiff suffered from a severe impairment; and

  (3)  the impairment met or was medically equal to a "listed impairment;" or

  (4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should

be reversed or remanded under sentence four because (1) the ALJ erred when evaluating the medical records and medical opinions, (2) the ALJ's hypothetical questions to the VE were improper; and (3) the ALJ's credibility determination is unsubstantiated.[1] (*See* docket no. 8.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

---

[1] Plaintiff sets forth his argument by stating that "[t]he Commissioner erred as a matter of law in failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray Mr. Fielder's (sic)." (Docket no. 8 at 7.) Plaintiff, however, does not discuss a single medical record or opinion that the ALJ allegedly failed to properly evaluate. Instead, Plaintiff asks that the "medical records be re-evaluated" because the ALJ's "only justification for not labeling Mr. Fielder as 'disabled' is due to credibility." (*Id.* at 11.)

Moreover, to the extent that Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE because they did not accurately describe his limitations, the ALJ is only required to incorporate in his hypotheticals those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of HHS.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ presented all of the limitations in Plaintiff's RFC in his first two hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations. Thus, Plaintiff does not assert that the ALJ erred in the structure of the hypothetical questions but, instead, argues that the ALJ should have adopted an RFC in line with the fifth hypothetical question. (*See* docket no. 8 at 10-11.) But Plaintiff's argument relies on rhetorical questions, not substantive law. (*See id.* ("How can a person who must sit and stand at will, take naps during the day, must continuously move around, mist limit the repetitive bending, stooping, kneeling, crouching, or lifting possibly be expected to perform any of these position? They can't.").)

In essence, Plaintiff's request that the Court re-evaluate his medical records and his assertion that his RFC is improper rely on his assertion that the ALJ's credibility determination is unsupported. Therefore, the undersigned will only address Plaintiff's third argument.

weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ's assessment of his credibility is unsubstantiated, but he does not provide any factual basis for this argument. (*See* docket no. 8 at 10.) Instead, Plaintiff merely reiterates his hearing testimony and argues that subjecting Plaintiff to perform the jobs suggested by the VE would "further subject[] his employers to liability" and that Plaintiff would be "subjected to the possibility of more pain and humiliation." (*Id.* at 9-10.) Defendant, however, correctly states that "'[t]he hiring practices of employers' and whether a claimant would 'actually be hired to do the work [he] could otherwise do' are immaterial to determining whether a claimant can perform work

which exists in the national economy." (Docket no. 11 at 6 (citing C.F.R. § 404.1566(c)(3), (7)).)

Defendant further asserts that Plaintiff has waived his argument with regard to the ALJ's credibility determination because Plaintiff failed to properly develop the same. (*Id.* at 4-5, citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).) Defendant may be correct, but the Court need not find that Plaintiff has waived his argument to find in favor of Defendant. The ALJ found that Plaintiff was not wholly credible because (1) "[d]espite his alleged limitations, the claimant cares for himself, cooks small meals, does light laundry, drives, shops, hunts, fishes, handles financial matters and spends time with his family and friends, (2) "the record reveals a single treatment for the allegedly disabling symptoms following October 30, 2009," (3) "treatment has been essentially routine and/or conservative in nature," (4) "claimant relies on over-the-counter medications," (5) "[h]e has undergone minimal treatment," and (6) "[t]he epidural injections received by the claimant were generally successful." (TR 26, 27.) These findings are sufficiently specific to make clear to Plaintiff and the Court the weight the ALJ gave to Plaintiff's statements and the reasons for that weight.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 11) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 15, 2014        s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 15, 2014        s/ Lisa C. Bartlett
                               Case Manager

11